## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

DANIEL H. TARVER                                                    PLAINTIFF

VS.                                        CIVIL ACTION NO. 3:05CV82-HTW-JCS

COLONIAL LIFE & ACCIDENT
INSURANCE COMPANY                                                  DEFENDANT

### MEMORANDUM OPINION AND ORDER

Before this court is a dispute over the question of coverage under a contract of

disability insurance.  The defendant Colonial Life and Accident Insurance Company

("Colonial Life") has moved for summary judgment under Rule 56(b)[1] of the Federal

Rules of Civil Procedure.  The plaintiff Daniel H. Tarver, a resident citizen of Natchez,

Mississippi, opposes the motion for summary judgment.  Colonial Life is a South

Carolina corporation with its principal place of business in Columbia, South Carolina.

This court has jurisdiction over the dispute based on diversity of citizenship and an

amount in controversy which exceeds this court's jurisdictional minimum of

$75,000.00, exclusive of costs and interest.  *See* Title 28 U.S.C. § 1332.[2]  While the

plaintiff contends that Colonial Life has not paid the plaintiff benefits which are due and

owing, Colonial Life responds that the plaintiff's circumstance does not meet what is

---

[1]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party
against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move
with or without supporting affidavits for a summary judgment in the party's favor as to all or any
part thereof."

[2]Title 28 U.S.C. § 1332(a)  provides in pertinent part that, "[t]he district courts shall have original
jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of
$75,000, exclusive of interest and costs, and is between – (1)  citizens of different States;  ...

required to be totally disabled under the terms of the insurance policy.  Having

carefully reviewed the exhibits, the legal briefs and other submissions of counsel, and

having heard and evaluated oral arguments, this court finds the motion of Colonial Life

for summary judgment to be well taken and it is granted for the following reasons.

### SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-25,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);  *Ragas v. Tennessee Gas Pipeline Company*,

136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if

the evidence is such that a reasonable jury could return a verdict in favor of the

nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986).  When ruling on a motion for summary judgment, the court is

required to view all inferences drawn from the factual record in the light most favorable

to the nonmoving party.  *Matsushita Electrical Industries Company v. Zenith Radio*,

475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986);  *Ragas*, 136 F.3d at 458.

Further, a court "may not make credibility determinations or weigh the evidence" in

ruling on motion for summary judgment.  *Reeves v. Sanderson Plumbing Products,

Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000);  *Anderson*, 477 U.S.

at 254-55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.  Mere conclusory allegations are not competent summary judgment evidence and, thus, are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). Likewise, hearsay evidence, unless it falls within a recognized exception, is not competent summary judgment evidence.  *See Fowler v. Smith,* 68 F.3d 124, 126 (5th Cir. 1995).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*;  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the

3

existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. 2548.

## MISSISSIPPI LAW GOVERNS THE LEGAL ANALYSIS

Inasmuch as this court is sitting in diversity pursuant to Title 28 U.S.C. § 1332, it is required to apply Mississippi substantive law to the issues raised by parties in this case. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). "The core of what has become known as the 'Erie Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law." *Hanley v. Forrester*, 903 F.2d 1030, 1020 (5th Cir. 1990), citing *Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938). When deciding an unsettled issue of state law, this court must predict (perform an "Erie-guess") how the Mississippi Supreme Court has, or would, interpret the question before the court. *Batts v. Tow-Motor Forklift Company*, 978 F.2d 1386, 1389 (5th Cir.1992).

Under Mississippi law, interpretation of an insurance policy's language is a question of law, not one of fact. *Noxubee County School District v. United National Insurance Company*, 883 So.2d 1159, 1165 (Miss. 2004); *Johnson v. Preferred Risk Automobile Insurance Company*, 659 So.2d 866, 871 (Miss. 1995). Mississippi insurance law is clear. An  insurance policy that is plain and unambiguous will be

4

construed exactly as written.  *Id.*  Any ambiguities in the insurance contract will be construed against the drafter and in favor of the insured.  *Centennial Insurance Company v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382-83 (5th Cir. 1998);  *Harrison v. Allstate Insurance Company*, 662 So.2d 1092, 1094 (Miss. 1995).  When an insurance policy has two equally reasonable interpretations, Mississippi law requires this court to adopt the interpretation giving greater indemnity to the insured.  *Caldwell v. Hartford Accident & Indemnity Company*, 248 So.2d 209, 213 (Miss. 1964).  The terms of the insurance policy in question are to be construed against the insurer and in favor of coverage.  *Harrison v. Allstate Insurance Company*, 662 So.2d 1092, 1094 (Miss. 1995);  *State Farm Mutual Auto Insurance Company v. Scitzs*, 395 So.2d 1371, 1373 (Miss. 1981).

## **PERTINENT FACTS**

The plaintiff is a mechanic who insured himself for sickness and disability.  On February 20, 1986, the plaintiff obtained a sickness and disability policy through the defendant Colonial Life.  The insurance policy is numbered 1 3173-301 82.   The plaintiff injured his leg and back at work and became unemployed as of May 17, 2002.  Being injured on the job, the plaintiff was eligible for and received workers compensation benefits for the injury to his leg and back.  Additionally, the plaintiff applied for and received from the defendant Colonial Life one year of total disability benefits in the amount of just over $12,000.00, the maximum benefit under the sickness and disability policy for a single period of total disability.

5

Once the plaintiff's one-year period of total disability benefits with Colonial Life had ended, the plaintiff was diagnosed by his physician with chronic rotator cuff syndrome and acromioclavicular arthrosis of the right shoulder.  The plaintiff underwent arthroscopic surgery on his right shoulder on June 20, 2003, to correct or alleviate problems caused by his rotator cuff  which had become progressively worse in the months preceding his surgery.  The surgery was performed by Dr. Van Temple of Jackson, Mississippi, an orthopedic surgeon.

After his surgery, the plaintiff once again sought to obtain total disability benefits under his policy with Colonial Life.  The plaintiff's sickness and disability policy provides that a period of total disability of up to one year will start over again for disabilities caused by a different covered injury or sickness.

On August 24, 2003, the plaintiff submitted his claim for total disability benefits under his sickness and disability policy with Colonial Life,[3] claiming a disability onset date of June 20, 2003, the date the plaintiff underwent rotator cuff surgery.  The plaintiff stated on his claim form that he was claiming disability for period lasting from June 20, 2003, to the "present," the present date being August 24, 2003.  The claim form asks, "[i]s this patient being considered to be house confined (unable to perform daily activities) or unable to perform 2 or more activities of daily living? (If not working at time of accident or when disability begins.)"  The plaintiff circled the word "no" following this inquiry.

---

[3]Disability benefits for any period of total disability under the policy amounted to twelve monthly payments of $1,000.00 each, or a total of $12,000.00.

6

Under the heading BENEFITS FOR SICKNESS, the plaintiff's insurance policy provides in pertinent part as follows:

> *Totally disabled or disabled* means that you are unable to work at your job for pay or benefits and are under the care of a doctor.  **If you do not have a job at the time you get sick, we will pay benefits only as long as you are kept at home by your sickness and are under the care of a doctor.**  *At home* means in your house or yard.  However, you can follow your doctor's orders even if it means leaving home.  *Under the care of a doctor* means you are being cared for on a regular basis by a doctor other than yourself unless the doctor states that continued treatment in the future would be of no benefit to you. ... (emphasis added).

After receiving the plaintiff's claim for total disability benefits, Colonial Life sent a letter to the plaintiff on September 17, 2003, stating that the plaintiff's claim for total disability benefits was being reviewed.  Then, on October 30, 2003, Colonial Life informed the plaintiff by letter that the plaintiff's claim for disability based on a back and leg injury had been paid.  Apparently, Colonial Life did not recognize that the plaintiff's August 24, 2003, claim pertained to his shoulder surgery, and not to the leg and back injury he had sustained on February 5, 2002, for which all benefits had been paid.  Confused by this response to his recent claim, the plaintiff sought assistance of counsel and, on November 13, 2003, counsel began a lengthy period of correspondence with Colonial Life.  Counsel's first letter informed Colonial Life of the apparent confusion over the basis for the plaintiff's claim, and suggested that Colonial Life look to the sickness provisions of the applicable policy in order to find the basis for coverage.

## A.  The Lengthy Period of Correspondence

On November 26, 2003, Colonial Life responded to the November 13, 2003, letter from the plaintiff's attorney, stating that it now was considering the plaintiff's claim for his shoulder condition as a claim separate from his earlier claim for the leg and back injury. The letter states in pertinent part as follows:

> It is our understanding Mr. Tarver is no longer employed because the business where he worked closed. We also note that Mr. Tarver has been promised a job when he gets to the point that he can physically perform a job as a diesel mechanic. However, our records indicate Mr. Tarver was not working at the time he became totally disabled due to his sickness. Under the section of Mr. Tarver's policy titled Total Disability Benefits it states *'If you do not have a job at the time you get sick, we will pay benefits only as long as you are kept at home by your sickness and are under the care of a doctor. At home means in your house or yard.* We are considering three weeks of house confinement (total disability) based on limited medical information from Dr. Van Temple. We have written Dr. Van Temple for dates Mr. Tarver has been house confined due to his shoulder, the restrictions and limitations placed upon him that required him to be house confined and a copy of his medical records. You may want to contact Dr. Temple's office and ask they respond to our request. As soon as we receive the information requested from Dr. Temple, we will be happy to review this claim for additional benefits.

Colonial Life specifically referred to its definition of total disability and disability for an insured who is unemployed when the period of disability begins. Colonial Life's response shows that it sought information regarding whether Dr. Temple, or any other physician, had confined the plaintiff to his home after surgery, thereby satisfying the requirement under the policy for payment of benefits to one who was unemployed when his period of disability began. Shortly after this letter was mailed to the plaintiff, Colonial Life paid the plaintiff a partial benefit payment in the amount of $266.66. The plaintiff's policy provides that Colonial Life will pay benefits on a daily basis if an insured is disabled for less than one month. One month is defined as thirty days. This payment covers a period of eight days ($33.33 x 8 = $266.00).

8

Counsel for the plaintiff responded to the $266.66 payment paid by Colonial Life in a letter dated December 12, 2003.  Counsel noted that the onset date claimed by the plaintiff was June 20, 2003.  Counsel's letter asserted that the medical records of Dr. Glen(sic) Temple already had been submitted to Colonial Life, and that a payment of $5,000.00 for five full months of benefits was already due and owing.  This letter did not state whether the plaintiff had been confined to his home by his physician after his surgery.

On December 23, 2003, Colonial Life sent the plaintiff a second payment in the amount of $1,000.00 ($33.00 dollars per day for 30 days), explaining in the accompanying letter that the check was payment for one month of benefits from July 11, 2003, through August 11, 2003.  The accompanying letter explained that Colonial Life had paid one month of benefits, contemplating one month as a reasonable recovery period.  Colonial Life noted that it had made this payment based on limited medical information, meaning that it did not know how many days the plaintiff had been confined to his home by Dr. Temple.  Colonial Life also stated in the accompanying letter that it had asked Dr. Temple to provide the exact dates of the plaintiff's house confinement due to the shoulder condition.  Because Dr. Temple had not given this specific information, and because a prior claim form from Dr. Temple indicated that the plaintiff was not confined to his home, Colonial Life asked the plaintiff to provide a signed statement listing the dates he was confined to his home by his physician in order to recover from the shoulder surgery.

On January 22, 2004, Colonial Life sent the plaintiff yet another letter to inform him that, without the plaintiff's authorization, Dr. Temple would not release the required

9

information regarding whether the plaintiff had been confined to his home after the surgery.  Colonial Life included forms with its January 22, 2004, letter for the plaintiff to fill out and return, and also included an authorization form for the plaintiff to complete and give to Dr. Temple in order to allow his response regarding the matter of home confinement.  The plaintiff submitted the completed claim forms for continuing disability benefits on January 27, 2004.  These forms are signed by the plaintiff and by Dr. Temple;  however, the authorization form permitting Dr. Temple to tell Colonial Life what days the plaintiff had been confined to his home, or would continue to be confined to his home was not provided.[4]

On February 6, 2004, Colonial Life sent a letter to counsel for the plaintiff explaining its position in this matter.  In good faith, said Colonial Life, it had allowed the plaintiff seven weeks[5] of total disability and had paid a total of $1,266.66 in benefits to the plaintiff.   Referring to a claim form completed by Dr. Van Temple dated January 29, 2004, Colonial Life noted that, according to Dr. Temple, the plaintiff was not confined to his home, and that Dr. Temple's treatment report said the plaintiff's recovery permitted him to perform sedentary work.  Thus, Colonial Life concluded that the plaintiff was not confined to his home.  If this was the case, then no more benefits were payable for this claim.

---

[4]The plaintiff completed a continuing disability claim form on January 27, 2004, claiming a period of home confinement from June 23, 2004 to January 27, 2004.  This form is signed only by the plaintiff, not by any physician.

[5]At the rate of $33.33 per day, $1266.66 accounts for five weeks of benefit payments paid after a two week waiting period.

On February 19, 2004, Colonial Life wrote to Dr. Temple and to Dr. David Sullivan, an internal medicine specialist with whom the plaintiff consulted on a regular basis, explaining that the plaintiff had filed a total disability claim, that this claim was based on chronic rotator cuff syndrome and acromioclavicular arthrosis of the right shoulder, and that the plaintiff's disability policy required that he be confined to his home in order to justify continuing payment of disability benefits.  Thus, Colonial Life asked Dr. Temple and/or Dr. Sullivan to provide the dates the plaintiff had been confined to his home, plus the restrictions and limitations that required the plaintiff to be confined to his home.  On February 20, 2004, Colonial Life advised the plaintiff's attorney by letter that it had asked these doctors for the information regarding home confinement and that no signed authorization form had been submitted by the plaintiff regarding this information.

Counsel for the plaintiff responded to Colonial Life immediately that the policy permitted the plaintiff's physician to set the plaintiff's schedule.[6]  Referring to Colonial Life's request for information on whether the plaintiff had been confined to his home due to his shoulder surgery, plaintiff's counsel stated that the policy language on this matter was "ambiguous and redundant," and that Colonial Life already had "hundreds of pages of medical records" at its disposal.  Finally, counsel charged that Colonial Life was "looking for veiled excuses to avoid payment ... in bad faith."

On March 3, 2004, the plaintiff signed and dated one of the authorization forms forwarded to him by Colonial Life;  however, there is nothing to show that this form was

_____

[6]Plaintiff's attorney apparently relied on the sentence of the policy stating that, " ... you can follow your doctor's orders even if it means leaving home."

11

mailed back to Colonial Life at that time.  A letter dated March 11, 2004, from Colonial

Life, responding to a letter from plaintiff's counsel dated March 9, 2004, asks the

plaintiff through his attorney to "reconsider his position set forth in your letter of

February 20, 2004, denying our request for the medical authorization we need to

further consider this claim for benefits.  Additionally, we would again ask for your

assistance in obtaining the information we need."

On May 11, 2004, plaintiff's counsel notified Colonial Life by a letter dated the

same date that Dr. Temple had provided counsel an affidavit stating that the plaintiff

was totally disabled and *was not required to stay at home*.  The affidavit is dated May

4, 2004.  At paragraph 3 the affidavit states as follows:

> As a matter of rehabilitating his shoulder, we prescribed extensive physical
> therapy which required Mr. Tarver to travel to the Sport Medicine Clinic
> three times per week.  **He has not been restricted to his home because
> of several necessary activities including acquiring prescription
> medicine, attending physical therapy, repeated follow up visits to my
> office and other general activities necessary for both his treatment and
> recovery.**

Dr. Temple stated very plainly that the plaintiff was not restricted to his home.  Dr.

Temple also stated at paragraph 4 of the affidavit that "[i]t is my opinion that Mr. Tarver

is totally disabled to perform any gainful employment, and this is particularly true in

view of his shoulder impairment, his age, his weight, and his prior work experience

which was that of a mechanic."

On May 21, 2004, Colonial Life responded to the plaintiff's letter of May 11,

2004, and its reference to Dr. Temple's affidavit.  Colonial states that it did not receive

a copy of the affidavit.  So, based on counsel's representation that the plaintiff "was not

required to stay at home," Colonial Life concluded that no further benefits appeared to be due under the terms of the policy.  Colonial once again referred to the provision of the policy which requires that an insured who is not employed at the time his disability commences must be confined to his home in order to qualify for total disability benefits, and noted that it would give the matter more consideration once it received the information about home confinement.

On June 1, 2004, plaintiff's counsel sent a letter to Colonial Life, claiming that he had received no response to his letter dated May 11, 2004.  This letter states that a copy of Dr. Temple's affidavit is attached.  The letter also expresses counsel's belief that Colonial Life's failure to pay benefits is in bad faith and a breach of contract.  Then, in a second letter dated June 1, 2004, and faxed to Colonial Life, counsel asks Colonial Life to disregard the earlier letter dated June 1, 2004, indicating that counsel actually had received Colonial Life's response to counsel's letter of May 11, 2004.  This second letter also states that Dr. Temple's affidavit is attached.

On June 8, 2004, Colonial Life informed plaintiff's counsel by letter that, according to Dr. Temple's affidavit, the plaintiff had not been restricted to his home after his shoulder surgery.  Colonial Life again explained that "the policy requires that the insured be kept at home and under the care of a doctor if the insured does not have a job at the time the disability commenced."  Colonial Life then explained to plaintiff's counsel that "[t]he affidavit you submitted indicates that Mr. Tarver was allowed to leave his home to follow his doctor's orders, but no where does it indicate that he was otherwise kept at home."  Finally, Colonial Life again reminds counsel that it still had not received the medical authorization form signed by the plaintiff which

13

would permit Colonial Life to make a more thorough determination with regard to the plaintiff's eligibility for total disability benefits.  Plaintiff's counsel replied by letter on July 7, 2004, that Colonial Life's request for the medical authorization form signed by the plaintiff was merely a delaying tactic.  Attached to this letter were 51 pages of medical records from Dr. Temple's office.  Counsel then told Colonial Life that Dr. Temple's affidavit was a medical opinion which satisfied fully all requirements under the policy.

Colonial Life informed the plaintiff and his counsel on July 19, 2004, that the additional medical records were being considered and that a claim status decision would be provided within seven to ten days.  On July 20, 2004, Colonial Life informed the plaintiff and his counsel that the additional medical information provided still did not show that the plaintiff was unable to leave his home during the claimed period of disability and that "[w]e regret that further benefits do not appear to be payable for this claim."  Colonial Life also stated that the plaintiff could still offer further clarification in support of his claim.  Colonial Life's letter to plaintiff's counsel dated August 12, 2004, repeats that home confinement had not yet been verified and that, if the plaintiff will provide the signed medical authorization, Colonial Life would request the home confinement information from Dr. Temple and give the plaintiff's claim further consideration.

**B.  Colonial Life's Medical Consultant**

14

All during the exchange of correspondence between Colonial Life, the plaintiff and the plaintiff's attorney, Colonial Life made repeated requests of its own medical consultant for information on whether the plaintiff was restricted to home confinement as directed by his doctor.   Colonial Life asked its medical consultant, a Dr. Smith,[7] whether he could ascertain that the plaintiff's sickness (shoulder surgery) required him to be confined to his home.  Dr. Smith replied on March 1, 2004, that the plaintiff's shoulder surgery should not have disabled him totally beyond one month.  On July 20, 2004, Dr. Smith again reviewed the matter at Colonial Life's request and concluded that the plaintiff did not suffer from a condition which required home confinement.

### C.  The Plaintiff's Functional Capacity Report

The medical records submitted by the plaintiff in this lawsuit include a functional capacity evaluation which was conducted at the direction of Dr. Temple by Jenifer M. Lassetter, a physical therapist with Sports Medicine South.  This evaluation was performed on January 18, 2004, and concluded that the plaintiff was capable of doing sedentary to light work based on an eight-hour workday in any occupation.  The evaluation shows not only that the plaintiff was not totally disabled six months after his surgery, but also that the plaintiff had recovered to the point of being able to do at least sedentary work in many occupations within six months after his surgery.  The evaluation says nothing about the plaintiff being confined to his home.

### D.  The Plaintiff's Deposition

---

[7]This court is unable to ascertain Dr. Smith's first name from his signature.

The plaintiff has submitted thirty-five pages of his deposition in this case as Exhibit "B."  Highlighted in this deposition are the plaintiff's comments concerning his staying at home.  First, the plaintiff says that his monthly gasoline bill was not very much because could not go anywhere other than to the doctor's office, the drugstore, the grocery store, and to physical therapy.  The plaintiff's response was made in the context of what limitations he was experiencing as the result of his financial situation after he became unemployed.  The plaintiff also stated that Colonial Life's denial of his total disability benefits "kept me at home" because his finances did not permit much travel, or the purchase of new clothing, or very much shopping at Christmas.  Nowhere does the plaintiff state that he was confined to his home by his doctor, nor does he provide any other medical reason for home confinement.

## ANALYSIS

The plaintiff filed the instant lawsuit on February 7, 2005, claiming bad faith breach of contract, intentional tort, and intentional infliction of emotional distress.  The plaintiff seeks two million dollars in compensatory damages, prejudgment interest, and punitive damages.  According to the plaintiff, the policy language concerning home confinement is ambiguous, and Colonial Life has acted in bad faith, failing to investigate the plaintiff's claim and to pay monies owed to the plaintiff in a timely manner.  Plaintiff also contends that Colonial Life's duty as an insurer to deal fairly and in good faith with its insured has been breached, citing *McFadden, M.D. v. Liberty Mutual Insurance Company*, 803 F. Supp. 1178, 1183 (N.D. Miss. 1992).  This court is not persuaded by these assertions.

16

In order to prevail in a bad faith claim against an insurer, a plaintiff must show that the insurer lacked an arguable or legitimate basis for denying a claim, or that the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. *Liberty Mutual Life Insurance Company v. McKneely*, 862 So.2d 530, 533 (Miss. 2003); *State Farm Mutual Automobile Insurance Company v. Grimes*, 722 So.2d 637, 641 (Miss. 1998).   Bad faith is characterized by some conduct which violates standards of decency, fairness or reasonableness." *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992).  Bad faith requires a showing of more than bad judgment or negligence;  rather, "bad faith" implies some conscious wrongdoing "because of dishonest purpose or moral obliquity." *Bailey v. Bailey*, 724 So.2d 335, 338 (Miss. 1998).

The plaintiff fails to show conscious wrongdoing or any deviation from right thinking on the part of Colonial Life in this case.  Colonial Life's primary concern at the onset of this matter was whether the plaintiff met the policy definition of one who incurs a disability at the time one also is unemployed.  Colonial Life made repeated attempts to ascertain whether the plaintiff was restricted to his home by his physician, the length of the restriction, and what conditions led to this decision by the physician.  Meanwhile, Colonial Life concluded that the plaintiff's shoulder surgery certainly might have caused him to be disabled for some period of time immediately following the surgery, if for no other reason than that some time would be required for recuperation.  Thus, Colonial Life assumed that seven weeks of disability was probable and paid a benefit based on that assumption.  Nevertheless, Colonial continued to attempt to ascertain

whether the plaintiff met the definition of a totally disabled person who was unemployed at the commencement of his disability.

Even if an insurer's decision to deny benefits turns out to be incorrect, this does not establish bad faith and warrant an award of punitive damages. *Grimes*, 722 So.2d at 641. Stated another way, even when an insurance carrier denies or delays payment of a valid claim, when based on a reasonable cause, bad faith will not lie and no predicate exists for a punitive damages claim. *Mutual Life Insurance Company v. Estate of Wesson*, 517 So.2d 521, 528 (Miss. 1987). The evidence recounted above by this court shows clearly that Colonial Life's delay in paying total disability coverage was based wholly on a legitimate provision of its policy, and not upon some conscious wrongdoing such as an unwarranted predisposition to deny claims.

The plaintiff argues that Colonial Life has breached the contract of insurance in bad faith. Although styled a tort claim, an action for bad-faith breach of contract is created by contract and requires proof of an actual breach of contract. *Aitken v. State Farm Mutual Automobile Insurance Company*, 404 So.2d 1040, 1045 (Miss. 1981) (no punitive damages as a matter of law if insurer prevails on contract claim). The elements of a breach of contract under Mississippi law are: (1) the existence of a valid and binding contract; (2) that the defendant has broken it, or breached it; and (3) that the plaintiff has been thereby damaged monetarily. *Warwick v. Matheney*, 603 So.2d 330, 336 (Miss. 1992).

The clear terms of the contract in question provide that total disability coverage will be paid to an insured who was unemployed at the time the disability commences

only where the insured is confined to his home under a doctor's care.  The correspondence and other exhibits submitted by the parties demonstrate that Colonial Life attempted to adhere to the provisions of the contract in question.  This attempt on the part of Colonial Life to determine whether the plaintiff's circumstances complied with the definition of an totally disabled insured simply cannot be categorized as conduct which violates standards of decency, fairness or reasonableness.  *See Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992).  The insurance policy differentiates between an insured who is totally disabled while working and an unemployed insured who becomes disabled.  The evidence in this case presents nothing to show that the plaintiff was restricted to home confinement;  instead, the affidavit of Dr. Temple, the plaintiff's deposition and the plaintiff's functional capacity evaluation all show that the plaintiff was not so confined.

Next, the plaintiff contends that Colonial Life failed to investigate the plaintiff's claim.  The evidence supports just the opposite.  Colonial Life unilaterally determined that an amount of disability should be paid, and it continued to request information regarding whether the plaintiff was confined to his home so that it could determine whether additional benefit payments were due and owing.  An insurer owes a duty to its insured to make a reasonably prompt investigation of all relevant facts, and an insured's claim must be paid only if there is no valid reason for denying the claim. *Murphree v. Federal Insurance Company*, 707 So.2d 523, 530 (Miss. 1997).  In the instant case the plaintiff never showed that he was confined to his home for any period of time as required by the policy.  Moreover, the plaintiff's August 24, 2003, application for disability benefits states that he was not being considered for home confinement.

19

The plaintiff also claims damages for intentional infliction of emotional distress and mental anguish.  "Mental anguish is a nebulous concept ... and requires substantial proof for recovery."  *Morrison v. Means*, 680 So.2d 803, 805 (Miss. 1996).  A plaintiff may establish proof in either of two ways.  First, where physical harm or mental assault results, requiring treatment by the medical profession, a legal cause of action for intentional infliction of emotional distress can exist.  *Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc.*, 759 So.2d 1203, 1211-12 (Miss. 2000).  Alternatively, if there is no physical injury, recovery for mental anguish can be appropriate under certain circumstances such as when the defendant's conduct evokes outrage or revulsion.  *Summers*, 759 So.2d at 1211.  However, in order to prevail, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Pegues v. Emerson Electric Company*, 913 F.Supp. 976, 982 (N.D. Miss. 1996) (quoting Restatement (Second) of Torts § 46 cmt. d. (1965)).  "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities."  *Lawson v. Heidelberg Eastern*, 872 F.Supp. 335, 338 (N.D. Miss.1995) (quoting Restatement (Second) of Torts § 46 cmt. d. (1965)).  "[I]t is the nature of the act itself-as opposed to the seriousness of the consequences – which gives impetus to legal redress."  *Pegues*, 913 F.Supp. at 982, quoting *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss. 1981).

As already stated above, Colonial Life assiduously sought to determine whether the plaintiff's circumstances complied with the definition of an totally disabled insured who was unemployed at the onset of his disability.   Meanwhile, Colonial Life recognized that some disability from the plaintiff's surgery to his shoulder would occur and it paid the plaintiff $1,266.00 in benefits.  At the time Colonial life made this payment, it had in its possession a claim form submitted by the plaintiff which indicated that the plaintiff was seeking disability benefits from June 20, 2003, to August 24, 2003.  Thereafter, Colonial Life sought additional information concerning whether the plaintiff had been confined to his home for any amount of time after August 24, 2003. This court  simply cannot characterize these actions by Colonial Life as conduct which violates standards of decency, fairness or reasonableness, or such as would be utterly intolerable in a civilized community.

In passing, this court notes that Mississippi law does not favor punitive damages, and that punitive damages are considered an extraordinary remedy allowed only with caution and within narrow limits.  *Life & Casualty Insurance Company of Tennessee v. Bristow*, 529 So.2d 620, 622 (Miss. 1988), *cert. denied*, 488 U.S. 1009, 109 S.Ct. 794, 102 L.Ed.2d 785 (1989).[8]  Punitive damages will not be assessed against a defendant unless the defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or

---

[8]The *Bristow* decision notes that under Mississippi law, in order for a punitive damages claim against an insurer to go to a jury, a judge must find (1) that the insurance company did not have a "legitimate or arguable reason to deny payment of the claim" and (2) that the plaintiff made a "showing of malice, gross negligence, or wanton disregard of the rights of the insured." *Bristow*, 529 So.2d at 624.

21

committed actual fraud." *See* Mississippi Code Ann. § 11-1-65(1)(a).[9]  In light of this court's observations and conclusions already addressed above, this court finds no basis for an award of punitive damages in this case.

Finally, in light of all the foregoing, the plaintiff's request for prejudgment interest has no foundation and must be denied.  Under the general rule applied under Mississippi law, prejudgment interest may be awarded only where the claim is liquidated or where there is a bad faith refusal to pay an amount owed.  *Warwick v. Matheney*, 603 So.2d 330, 342 (Miss. 1992).  Neither of these elements is present in the instant case.

## **CONCLUSION**

At the conclusion of the summary judgment hearing conducted by the court in this case, the court requested that the parties submit any information regarding the plaintiff's condition which would have been in Colonial Life's possession at the time it was considering the plaintiff's claim for disability.  The parties submitted many documents, none of which shows that the plaintiff was confined to his home for any period of time by his physician(s).  Thus, persuaded by its previously-detailed discussion, this court finds the motion of the defendant Colonial Life & Accident Insurance Company for summary judgment [**Docket No. 42-1**] to be well taken and the same is granted.

---

[9]Mississippi Code Ann. § 11-1-65(1)(a) provides in pertinent part that, "(1) In any action in which punitive damages are sought: (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud."

This court will enter a Final Judgment in accordance with the local rules.


**SO ORDERED AND ADJUDGED** this the 21st day of February, 2007.

**s/ HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**


CIVIL ACTION NO. 3:05-CV-82WS
Order Granting Motion for Summary Judgment